IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JONATHAN WEIR, on behalf of
himself and all others similarly situated,                     No. 3:10-CV-898-HZ

           Plaintiff,                                                   OPINION & ORDER

    v.

ANNETTE JOLY; CHRISTIAN JOLY;
ANDREAS JOLY; JASON SMITH;
CAPERS CAFÉ & CATERING CO.,
and J. DOE

           Defendants.

Jon M. Egan
Jon M. Egan, PC
240 Sixth Street
Lake Oswego, OR 97034-2931

    Attorney for Plaintiff

1 - OPINION & ORDER

Chrys Anne Martin
Christopher F. McCracken
Davis Wright Tremaine, LLP
1300 SW Fifth Avenue, Suite 2300
Portland, OR 97201-5630

    Attorneys for Defendants

HERNANDEZ, District Judge:

    Defendants filed a motion for partial summary judgment ("MSJ"). Dkt. #46. Plaintiff filed a cross-MSJ, its own MSJ on additional claims, and a motion to strike defendants' affirmative defenses. Dkt. #64. Plaintiff then filed another motion to request a determination of whether the one-way intervention doctrine would preclude certification of a class or a collective action. Dkt. #78. Given my ruling on the motion concerning the one-way intervention doctrine (see December 2, 2011 Order, Dkt. #88), I am reserving ruling on plaintiff's motions and any rulings that involve potential class or collective action claims. I grant in part and deny in part defendants' motion for partial summary judgment.

## BACKGROUND

    Plaintiff Jonathan Weir is a former employee of defendant Capers Café & Catering Company ("Capers"), an Oregon corporation. Compl. at 2. Capers consists of three restaurants and a catering business. Def.'s Memo. in Supp. of Mot. for Summ. J. ("Capers MSJ"), 5. Defendants Annette Joly and Christian Joly own Capers. Answer ¶7. Defendant Andreas Joly is the son of Annette and Christian Joly, and is the general manager of the Capers location in the Portland International Airport. Capers MSJ, 5. Defendant Jason Smith is a manager at the Capers airport location. Id.

    Weir was a server and wine bar attendant at the Capers location inside the Portland

2 - OPINION & ORDER

International Airport.  Id.  He was paid a minimum hourly wage of $8.40 per hour, excluding tips from customers.  Weir worked for Capers for just over a year, from March 5, 2009 until April 22, 2010, when Capers terminated his employment.  Id.  Weir has brought several claims against defendants for various federal and state wage violations.  Compl. ¶¶23-47.  Weir also asserts these claims as proposed collective and class actions.  Id. at ¶17.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial."  Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation omitted).  The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial.  Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material.  Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009).  The court views inferences drawn from the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  Long v. City & County of Honolulu, 511 F.3d 901, 905 (9th Cir. 2007).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

Capers moves for summary judgment on the following:

1. Claims relating to deductions for or time spent on fingerprinting, background checks, and security badges;
2. Claims that defendants required employees to pay for aprons;
3. Claims (class or collective action) that defendants required employees to pay for point-of-sale cards;
4. Claims that Capers deducted time from employees' time worked for meal breaks;
5. Weir's individual claim that he is entitled to overtime;
6. Claims (class or collective action) that employees were required to pay till shortages;
7. Claims (class or collective action) that Capers failed to pay on the designated payday under ORS § 652.120;
8. Weir's individual claims that Capers failed to pay final wages under ORS § 652.140.

Capers MSJ, 6-26. Weir states that he will not seek class or collective action for claims related to aprons (#2), point-of-sale cards (#3) and till shortages (#6), but that he does not "per se" concede defendants' motions regarding those claims. Pl.'s Memo. in Supp. of Mot. for Summ. J. ("Weir MSJ"), 1.

1. Claims relating to deductions for or time spent on fingerprinting, background checks, and security badges.

Plaintiff Weir claims that Capers wrongfully deducted the price of security badges and failed to pay him for the time spent to obtain the security badge. Compl. ¶¶10, 14. This allegation is expressed in claim six for wrongful deductions. Id. at ¶38. Although not

4 - OPINION & ORDER

specifically pled in the complaint, it appears that these allegations affect claims one and three for violating federal and Oregon minimum wage laws. Compl. ¶¶23, 29.

The Transportation Security Administration ("TSA") established regulations that require a fingerprint-based criminal history records check for any individual seeking unescorted access to a secured identification display area ("SIDA"). 15 C.F.R. § 1542.209(a)(2). Unescorted access authority means "the authority granted by an airport operator . . . to individuals to gain entry to, and be present without an escort in, secured areas and SIDA's of airports." 49 C.F.R. § 1540.5. A SIDA is "a portion of an airport, specified in the airport security program, in which security measures specified in this part are carried out." Id. The airport operator[1] is responsible for securing SIDAs by establishing and carrying out a personnel identification system and ensuring that an individual undergoes a criminal history records check before that person is granted unescorted access. 15 C.F.R. § 1542.205. As for the payment of fingerprinting fees,

> *Airport operators must pay for all fingerprints* in a form and manner approved by TSA. The payment must be made at the designated rate (available from the local TSA security office) for each set of fingerprints submitted. Information about payment options is available though the designated TSA headquarters point of contact. Individual personal checks are not acceptable.

49 C.F.R. § 1542.209(f) (emphasis added). Once an individual passes the criminal history records check, the airport operator issues a security badge in accordance with the personnel identification system guidelines that TSA has established. 49 C.F.R. § 1542.211; Decl. of John Dean in Supp. of Mot. for Partial Summ. J. ("Dean Decl.") ¶13.

Weir advances two arguments: (1) Capers wrongfully deducted the fee for the fingerprint-

---

[1] "Airport operator" is defined as "a person that operates an airport serving a aircraft operator or a foreign air carrier required to have a security program under part 1544 or 1546 of this chapter." 49 C.F.R. § 1540.5.

5 - OPINION & ORDER

based criminal history records check from Weir's paycheck and (2) Capers violated minimum wages laws by not paying Weir for the time spent to undergo the fingerprint-based criminal history records check. I will address each argument in turn.

In this case, Port of Portland ("Port") is the airport operator of the Portland International Airport. The Port is responsible for conducting the fingerprint-based criminal history records check for a job applicant seeking employment in a secured area of the airport. Dean Decl. ¶¶3-9, 12. The Port pays TSA the fee associated with the background check. Id. at ¶18. The job applicant may pay the fee directly to the Port, but if not, then the Port bills the employer. Id. In effect, the Port has asked employers for a guarantee of responsibility for the fee. Id. In Weir's case, Capers received authorization from Weir for the deduction of the fee from his paycheck and paid the fee to the Port. Id. Prior to 2008, Capers advanced the fee to the Port out of pooled tips, but with the employee's approval. Id. Capers has a policy of refunding the fee once an employee has worked for six months.[2] Id. at 12.

Capers argues that there was no wrongful deduction from Weir's paycheck for the fee associated with the background check. They argue that the deduction is permitted under ORS § 652.610(3)(b) and (c). Under subsection (b), a deduction is proper if the deduction is authorized in writing, is for the employee's benefit, and is recorded in the employer's books. ORS § 652.610(3)(b). Under subsection (c), the deduction is allowed if the employee voluntarily signed an authorization for the deduction, the ultimate recipient of the money withheld is not the employer, and the deduction is recorded in the employer's books. Id. at (c).

Capers has established that the requirements of ORS § 652.610(3)(c) have been met.

---

[2]Weir received a refund of the $39 fee after working six months. Capers MSJ, 12.

6 - OPINION & ORDER

Weir signed an authorization form for the deduction of the fee, the Port pays the fee to TSA–the ultimate recipient of the fee, and that the deduction was recorded in Capers's books. Decl. of Annette Joly in Supp. of Capers MSJ ("Annette J. Decl.") ¶7. Weir counters by arguing that he did not voluntarily authorize the deduction and that Capers is the ultimate recipient of the deduction. Weir MSJ, 8. Both of these arguments fail. First, there is no evidence that Weir was forced to sign the authorization. The evidence cited by Weir shows that employees are given forms on their first day of work to sign, including the authorization to deduct the background check fee. Id. at 8-9. Second, it is undisputed that Capers pays the Port the background check fee that it deducts from the employee's paycheck. Capers Reply, 2.

With respect to ORS § 652.610(3)(b), like subsection (c), the deduction needs to be authorized in writing and recorded in the employer's books. There is no genuine dispute of material fact regarding these two requirements, as discussed above. The parties debate whether the deduction for background check fee is for the employee's benefit. Capers MSJ, 12; Weir MSJ, 7. Capers argues that the deduction benefits the employee because the end result is a job, and a deduction allows the applicant to defer paying the fee up front. Capers MSJ, 12-13. Weir disagrees based on his belief that the background check fee is the responsibility of the employer. Weir MSJ, 7. Weir classifies the background check fee as overhead, "a cost of doing business, like the electricity". Id. I disagree with plaintiff. The deduction was for the benefit of the employee.

Weir raises a number of other arguments in an attempt to show that the employer is responsible for the background check fee. First, he cites to 49 U.S.C. § 44936. Pl.'s Combined Memo. in Supp. of MSJ, Cross-MSJ, and Mot. to Strike ("Weir MSJ"), 5. This section is limited

7 - OPINION & ORDER

to employment as a "security screener . . . or a position in which the individual has unescorted access, or may permit other individuals to have unescorted access, to–(i) aircraft of an air carrier or foreign air carrier; or (ii) a secured area of an airport in the United States the Under Secretary designates that serves an air carrier or foreign air carrier." 49 U.S.C. § 44936(a)(1). Employees of Capers do not fall under this section because they do not act as a security screener or have unescorted access (or permit others to have access) to aircraft or other secured areas that serves air carriers. Next, Weir points to regulations that state "airport operators" or "aircraft operators" must pay for the fingerprinting fees. Weir MSJ, 5; 49 C.F.R. §§ 1542.209(f), 1544.229(e). Yet Capers is neither an airport operator nor an aircraft operator.

In further support of his argument that the employer is responsible for the fingerprinting fee, Weir argues that the badges are employee specific, that the Port bills the employer if the applicant does not pay the fee at the time of application, that the Port bills the employer if a badge is not returned after the end of employment, and that Capers's lease with the Port requires Capers to ensure that its employees wear security badges. Weir MSJ, 11; Weir Reply, 16, 18-19. All of these arguments presume that employers are responsible for the fee because the Port has imposed these responsibilities on the employers. While that is true in the context of the relationship between the Port and the employer, I do not agree that this presumption is true in the context of the relationship between the employer and the employee. In other words, neither Congress nor TSA has made the fingerprinting fee the responsibility of the employer in this scenario. In fact, according to the regulations, the Port must pay the TSA fees. While the Port has placed responsibility on the employer to pay the fee if the applicant does not at the time of application, I find that the employee is ultimately responsible for paying the fee.

8 - OPINION & ORDER

As for the claims of minimum wage violations[3], Weir claims that when Capers did not pay employees for time spent undergoing the background check, the federal and Oregon minimum wage laws were violated. Weir MSJ, 6, 14. Under Oregon law, the definition of "hours worked" is defined as

> [A]ll hours for which an employee is employed by and required to give to the employer and includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place and all time the employee is suffered or permitted to work. 'Hours worked' includes 'work time' as defined in ORS 653.010(11).

OAR 839-020-0004(20). "'Work time' includes both time worked and time of authorized attendance." ORS § 653.010(11).

Weir asserts that the time spent for the security check, roughly 1.5 hours, qualifies as hours worked. Weir MSJ, 14. This argument is based on the premise that the security check is for the employer's benefit. Capers argues that the time spent for the security check does not fit the definition of hours worked; and that an applicant is frequently not an employee during the start of the process. Capers Reply, 5. Capers likens the process to a license that must be obtained before beginning employment, such as a liquor handling license. Id. at 6. I agree with defendants' reasoning and do not find that the time spent for the background check is considered hours worked. The background check is a requirement of the TSA and the Port, not a duty imposed by Capers.

Weir further argues that an unlawful deduction violates the minimum wage laws because the deduction lowers the hourly wage. Weir MSJ, 14. Weir cites to OAR 839-020-0020, which

---

[3]Weir also argues that Oregon and federal overtime laws are violated but does not support this argument with any legal or factual analysis. Weir MSJ, 6. Therefore, I do not discuss this claim.

9 - OPINION & ORDER

states that the cost of certain items may not be deducted from the minimum wage:

> (1) Tools.
> (2) Equipment.
> (3) Uniforms, including but not limited to, garments such as suits, dresses, aprons, and all other garments whatsoever as worn by the employees as a condition of employment. Such apparel of a similar design, color, or material or forming part of the decorative pattern of the establishment or distinguishing the employee as an employee of the concern is presumed to be worn as a condition of employment.
> (4) Laundry or cleaning of uniforms.
> (5) Maintenance of tools, equipment or uniforms.
> (6) Breakage or loss of tools, equipment or uniforms.
> (7) Any other item required by the employer to be worn or used by the employee as a condition of employment.

OAR 839-020-0020. Weir argues that a badge is considered a tool or equipment because the badge is used to get into secured areas. Weir MSJ, 16. I do not find this argument convincing. As discussed earlier, the fee collected by the Port is for the background check. The badge is a result of passing the background check. Weir also argues that the badge is a uniform because it must be worn at all times in the secured area, and therefore is also worn or used as a condition of employment. Id. Capers counters that the badge is not required by Capers to be worn as a condition of employment, but by TSA and the Port. Capers MSJ, 13-14. I agree with Capers on this point. The badge is not a "uniform" because TSA and the Port, not Capers, requires the fingerprint-based criminal history records check. Capers operates restaurants at locations other than the airport, and employees at other locations are not required undergo the background check or wear a badge. Annette J. Decl. ¶5. Finally, because I previously found that the deduction was proper under the general deduction statute, ORS § 652.610, the Oregon minimum wage law (ORS § 653.025) is not violated.

Weir's federal claim for violating the minimum wage law is similar to his claim under

Oregon law, but is governed by 29 U.S.C. § 206.  Although there is no definition of hours worked,  "[w]ork not requested but suffered or permitted is work time." 29 C.F.R. § 785.11.  Further, the work week includes "all time during which  an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace".  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 690-691 (1946).  Weir concedes that the definition of hours worked under state and federal law is virtually the same.  Weir MSJ, 17.  Weir's basis for the federal claim is the same as his state law claim.  Thus, Weir's federal claim for minimum wage law violation should also fail for the same reasons as previously discussed.

Weir next argues that the TSA fee deduction is not one of the deductions allowed under ORS § 653.035.  Under that statute, employers may deduct the fair market value of lodging, meals, or other facilities or services furnished by the employer for the benefit of the employee.  Capers does not rely on this statute to support its arguments, and I see no reason to address an argument that defendant has not raised.

Finally, Capers asks this Court to consider the fact that Weir made more than minimum wage if his tips are considered.  Capers Reply, 8.  I see no need to make findings with respect to this argument given my prior rulings.  Summary judgment is granted with respect to Weir's claims that Capers wrongfully deducted the fee for the fingerprint-based criminal history records check or failed to pay for the time spent to undergo the background check.

    2.  Claims that defendants required employees to pay for aprons.

Capers moves as to Weir's claim that he was required to pay for aprons.  Capers MSJ, 14.  Weir has testified that he never paid for an apron.  Id.  Furthermore, Capers has never required an employee to pay for an apron.  Decl. of Andreas Joly in Supp. of Mot. for Summ. J.

("Andreas Decl.") ¶5. I grant summary judgment in favor of defendants on Weir's claim that Capers required him to pay for aprons.

> 3. Claims (class or collective action) that defendants required employees to pay for point-of-sale cards.

Weir's individual claim with respect to the point-of-sale cards is not at issue. Plaintiff states that he will not seek class certification on claims that Capers required employees to pay for point-of-sale cards. Weir MSJ, 1. Because defendants move only with respect to the class or collective claims, I deny the motion. As explained earlier, only Weir's individual claims are at issue due to my December 2nd order.

> 4. Claims that Capers deducted time from employees' time worked for meal breaks.

Weir claims that Capers "deducted time from employees' time worked for meal breaks, whether or not those employees received a bona fide meal break." Compl. ¶15. Employers are required to give employees a 30-minute meal break for every work period of six to eight hours. Or. Admin. R. ("OAR") 839.020.0050. The employer must pay the employee for the entire 30-minute meal break "if an employee is not relieved of all duties for 30 continuous minutes". Id.

Weir argues that if he took meal breaks of less than 30 minutes, and then he must be paid for the full 30 minutes. Weir MSJ, 23; id. at 26 ("Mr. Weir is not suing for unprovided breaks. He is suing to be paid for breaks that he actually took and was not paid for".). Weir proposes that the statute mandates an employer to pay an employee for a 30-minute meal break if the employee clocks-in from a meal break before 30 minutes have elapsed. Weir MSJ, 32. In other words, if the employee took a 29 minute meal break, and happens to clock in before 30 minutes have elapsed, the employer would be obligated to pay the employee for the entire 30-minute meal

break.

It is undisputed that Capers provides each employee with a 30-minute meal break. Capers Reply, 10. It is also undisputed that employees are instructed to not come back earlier than 30 minutes. Id. Even the Capers employee handbook instructs employees of this rule. Id. Capers allows their employees to take their meal break anywhere they wish. Capers MSJ, 21. Weir has not presented any evidence that Capers did not provide uninterrupted meal breaks of 30 minutes.[4] Regardless, Weir has not shown that he clocked in early because Capers requested him return to work before 30 minutes had elapsed. Weir alleges that he was once told to return to work early, but cannot remember any details, such as the date, the person making the request, or the circumstances surrounding the request. Capers Reply, 11. Based on this vague recollection alone, a reasonable trier of fact would not find that Capers interrupted Weir's 30-minute meal break. There is no evidence that Capers expected employees to work during meal breaks, encouraged employees to return early from meal breaks, or turned a blind eye to employees starting work early. On the contrary, employees that returned late to work from meal breaks were never disciplined. Capers Reply, 13.

Weir also seems to take the position that an employer must pay an employee for a break of less than 30 minutes, no matter the reason. For instance, if the employee took a 29-minute meal break and happened to clock in a minute before 30 minutes had passed, the employer must pay the employee for the entire 30 minutes. Although Oregon courts have not spoken on this

---

[4]The only evidence of Weir's meal breaks is found in an unrelated part of plaintiff's memo discussing Weir's overtime claim. Weir MSJ, 35. On June 18, 2009, Weir clocked in after a 25 minute break and on June 19th, he clocked in after a 27 minute break. Id. Plaintiff has submitted a few time card records in support of other claims, but not to support the unpaid meal break claim. Decl. of Jon Egan in Opp. to Defs.' Mot. for Summ. J. ("Egan Decl.") Exs. 2-4.

13 - OPINION & ORDER

issue[5], I do not agree with Weir's interpretation of the rule.  The rule requires that employers "provide" a meal break of 30 continuous minutes during which the employee is relieved of all duties.  OAR 839-020-0050.  To require an employer to police when an employee clocks in and out would be an unreasonable burden on the employer.  The outcome would be an employee who could take a proper meal break, but then demand that it paid simply by clocking in early.  I grant defendants' motion for summary judgment on Weir's claims that Capers wrongfully deducted for meal breaks.

        5.      Weir's individual claim that he is entitled to overtime.

Weir claims that Capers failed to pay him overtime for working in excess of 40 hours per week.  Compl. ¶¶32-34.  Overtime pay is required for time worked in excess of 40 hours under both Oregon and federal laws.  ORS § 653.025; 29 U.S.C. § 206.  Weir claims that he is entitled to one-minute of overtime pay for the week of June 14-20, 2009.  This claim depends on a finding that his 25 and 27 minute meal breaks should be considered time worked.  In other words, Weir was scheduled to work 39 hours and 9 minutes for the week of June 14-20.  That week, he clocked in early from his meal breaks (5 minutes and 3 minutes early).  For his overtime claim, Weir counted his 25 and 27 minute meal breaks (52 minutes total) as time worked, which results in 1 minute the week of June14th.  Weir's claim fails in light of my previous finding that the two meal breaks are not counted as time worked.

Even if the meal breaks were considered time worked, the Supreme Court has held that "periods of up to eight (8) minutes a day may be ignored without penalty."  Anderson, 328 U.S.

---

[5]This particular issue is currently before the California Supreme Court.  Wang v. Chinese Daily News, Inc., 623 F.3d 743, 758 (9th Cir. 2010).

14 - OPINION & ORDER

at 683.  The Court explained that the law is meant to deal with situations when an employee gives up a substantial amount of time, not mere seconds or minutes.  Id.  Weir asks for 30 days of penalty wages and liquidated damages for the alleged 1-minute of overtime.  Weir MSJ, 36.  I grant defendants' motion that on Weir's overtime claim.

      6.     Claims (class or collective action) that employees were required to pay till shortages.

Defendants' seek summary judgment as to the class or collective action claims that Capers required employees to pay till shortages.  Plaintiff states that he will not seek class certification on this claim.  Weir MSJ, 1.  I deny defendants' motion for summary judgment on this claim.  As explained earlier, only Weir's individual claims are at issue due to my December 2nd order.

      7.     Claims (class or collective action) that Capers failed to pay on the designated payday under ORS § 652.120.

Weir claims that Capers failed to pay employees on the designated payday.  Compl. ¶16.  Defendants do not move on Weir's individual claim.  Capers MSJ, 25, n.8.  I deny defendants motion on this claim.  As explained earlier, only Weir's individual claims are at issue due to my December 2nd order.

      8.     Weir's individual claims that Capers failed to pay final wages under ORS § 652.140.

Weir alleges that Capers failed to pay his final wages in violation of ORS § 652.140.  Compl. ¶¶35-37.  Weir was terminated on April 22, 2010.  Weir's final paycheck was available to be picked up the next day, but Weir requested that Capers mail him the check–which they did.  Capers MSJ, 28.  Capers then discovered that they had made an innocent error in calculating

Weir's final wages and subsequently mailed him another check for an additional amount. Id.; Annette J. Decl. ¶13.

"When an employer discharges an employee . . . , all wages earned and unpaid at the time of the discharge or termination become due and payable not later than the end of the first business day after the discharge or termination." ORS § 652.140(1). If an employer "willfully" fails to pay final wages for an employee who has been terminated, then there is a penalty of eight hours of wages per day for each day the final payment is late, for up to 30 days. ORS § 652.150. The definition of willful in civil cases is "'that the thing done or omitted to be done was done or omitted intentionally. It amounts to nothing more than this: That the person knows what he is doing, intends to do what he is doing, and is a free agent.'" State ex rel. Nilsen v. Johnston, 233 Ore. 103, 108 (Or. 1962) (quoting Davis v. Morris, 37 Cal. App. 2d 269, 274 (Cal. App. 1940)). Good faith is not a defense to willfulness. Davis v. Maxim Integrated Prods., 57 F. Supp. 2d 1056, 1059, n.1 (D. Or. 1999). An employer is not "willful" if there is an unintentional miscalculation. Nilsen, 233 Ore. at 108 (an "unintentional miscalculation" is not willful).

As alleged in the complaint, Weir claims that Capers willfully failed to pay plaintiff "all wages due by the statutory deadline upon termination" of employment. Compl. ¶36. As pled, defendant is left guessing as to the meaning of this claim and proposes that Weir advances two different arguments: (1) a "traditional" violation because a second check was issued and (2) a "derivative" violation because the final paycheck did not include all the wages owed from prior violations of the wage laws. Capers MSJ, 28, n.9. Defendants confirmed with plaintiff that Weir's individual claim is based on the fact that a second paycheck issued, and the class claims are based on both arguments. Id. The second argument was not expressly pled in the complaint.

However, because the parties have lengthily briefed the issue, I will address the merits of the argument.

As a threshold issue, there is no penalty unless the employer willfully withheld the final wages. Capers has established that the miscalculation was a mistake and inadvertent. It is Weir's burden to prove willfulness, and he has failed to provide any evidence that Capers acted willfully. Sabin v. Willamette-Western Corp., 276 Ore. 1083, 1093 (Or. 1976) (citing Nilsen, 233 Ore. at 293-94). Weir cites to two cases, Kling v. Exxon, 74 Or. App. 399 (Or. Ct. App. 1985) and Wells v. Carson, 78 Or. App. 536 (Or. Ct. App. 1986), in opposition. Weir MSJ, 49. Kling and Wells are factually inapposite, as the employers knew they were withholding payment of final wages. Kling, 74 Or. App. at 403; Wells, 78 Or. App. at 541. Capers did not intend to withhold the final wages, unlike the employers in Kling or Wells. There is no genuine dispute of material fact regarding willfulness. I grant summary judgment with respect to Weir's individual claim that Capers failed to pay his final wages on time.

As for the second argument, in which prior violations of wage laws were not accounted for in the final paycheck, the alleged violations–the TSA fee, time spent for the background check, meal breaks of less than 30 minutes, and overtime claim–have been dismissed as previously discussed.[6] Because the second argument involves class claims, I deny summary judgment on those claims. As explained earlier, only Weir's individual claims are at issue due to my December 2nd order.

/ / /

---

[6] Weir also brings a claim for "unauthorized deductions of previous overpayments". Weir Reply, 44. This claims appears nowhere in the complaint and is not properly before the Court.

17 - OPINION & ORDER

CONCLUSION

Based on the foregoing, I grant in part and deny in part defendants' motion for partial summary judgment [#46] as follows:

1. Claims relating to deductions for or time spent on fingerprinting, background checks, and security badges – granted
2. Claims that defendants required Weir to pay for aprons – granted
3. Claims (class or collective action) that defendants required employees to pay for point-of-sale cards – denied
4. Claims that Capers deducted time from employees' time worked for meal breaks – granted
5. Weir's individual claim that he is entitled to overtime – granted
6. Claims (class or collective action) that employees were required to pay till shortages – denied
7. Claims (class or collective action) that Capers failed to pay on the designated payday under ORS § 652.120 – denied
8. Weir's individual claims that Capers failed to pay final wages under ORS § 652.140 – granted.  Class or collective claims are denied.

IT IS SO ORDERED.

Dated this   23rd   day of December, 2011


        /s/ Marco A. Hernandez
        MARCO A. HERNANDEZ
        United States District Judge